# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LAWRENCE HAYES**     **PLAINTIFF**
**ADC #149601**

**V.**     **NO. 4:21-cv-00532-LPR-ERE**

**STEPHEN WATSON**     **DEFENDANT**

## RECOMMENDED DISPOSITION

### I.  Procedure for Filing Objections

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If no objections are filed, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

## II.  Background

Plaintiff Lawrence Hayes, an Arkansas Division of Correction ("ADC") inmate, filed this *pro se* lawsuit under 42 U.S.C. § 1983 complaining that Sergeant Stephen Watson used excessive force against him on February 23, 2021.[1] *Doc. 2*.

Defendant Watson has now filed a motion for summary judgment arguing that Mr. Hayes failed to exhaust his administrative remedies before he filed this lawsuit. *Doc. 16*. Mr. Hayes responded to Defendant Watson's motion, but rather than argue that he exhausted his administrative remedies before filing suit, he realleges that he was assaulted by Defendant Watson on February 23, 2021. *Id.*

For the reasons set out below, Defendant Watson is entitled to summary judgment.

## III.  Discussion

### A.  The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted prior to filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or

---

[1] The Court dismissed Mr. Hayes' claims against Defendants Kendrick Lewis, Erica Boykins, and Audrea Culcagear on screening because Mr. Hayes failed to provide facts that would support a claim that those Defendants violated his constitutional rights. *Docs. 5, 8*.

other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Hayes to satisfy the ADC's requirements for raising and administratively exhausting the claims he is asserting in this lawsuit before bringing this action.[2]

### B.   The ADC's Exhaustion Policy

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34 ("AD 19-34"). *Docs. 16-1* (Grigsby-Brown Dec.); *16-2* (AD 19-34). The written

---

[2] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Doc. 16-2 at 19*.

At "Step One," the grievance process begins when an inmate submits, using a unit level grievance form, a claim to the designated unit-level problem solver within fifteen calendar days of the incident.[3] The statement of the claim must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate . . . " *Doc. 16-2 at 6*. A problem solver then investigates the complaint, and if it cannot be resolved, he or she documents the resolution attempt at the bottom of the grievance form, and the inmate and the problem solver sign and date the form. *Id. at 7-8*. At this point, the inmate has three days to proceed Step Two, using the same form. *Id. at 8*.

At "Step Two," the inmate may file a formal grievance on the same form used at Step One, explaining why the informal resolution was unsuccessful. *Doc. 16-2 at 9*. Within five days of receiving a formal grievance, a grievance officer provides the inmate a form that either acknowledges or rejects the grievance. *Id. at 10, 21*. If the

---

[3] Technically, an inmate's claim asserted at Step One does not become a formal "grievance" until it proceeds to Step Two, where it is then assigned a grievance number. Because ADC officials, when processing grievances, refer to the filing of a Step One informal resolution as filing a grievance, the Court will do the same.

grievance is accepted, the acknowledgment form provides an expected response date (*Id. at 21*), and if no response is received by that date, the inmate may proceed to "Step Three." *Id. at 11*.

At "Step Three," if the inmate receives no response or is unsatisfied with a response at Step Two, he or she may appeal to a deputy director. *Id. at 11-12*. In the Step Three appeal, the inmate *must* include the original unit level grievance form and the warden's decision form or the acknowledgement or rejection of the unit level grievance form. *Doc. 16-2 at 12*. If the inmate fails to submit either of the two pages with the appeal, the appeal may be returned to the inmate as rejected. *Id*. A deputy director's decision or rejection marks the end of the grievance process. *Id. at 13*.

Thus, to properly exhaust his administrative remedies with respect to the excessive-force claim asserted against Defendant Watson, Mr. Hayes was required to present the claim in a timely filed grievance and appeal it through all three steps of the ADC's grievance process. *See Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

It is undisputed that Mr. Hayes only filed one grievance - CU-21-00282 - relevant to his claim in this case. According to Terri Grigsby-Brown, the ADC Inmate Grievance Supervisor, Mr. Hayes filed that grievance on February 23, 2021, complaining that while Mr. Hayes was in full restraints, Defendant Watson assaulted him. *Docs. 16-1 at 7; 16-3 at 2*. Specifically, Mr. Hayes alleges that Defendant Watson placed his arm around Mr. Hayes' neck, cutting off his breathing, and then slammed his face onto the floor, rendering him unconscious. *Doc. 16-3 at 2*.

In his appeal to the deputy director at Step Three, Mr. Hayes failed to include the unit level grievance form as required by the prison's grievance policy. *Docs. 16-1 at 7, 16-3*. And because Mr. Hayes failed to submit grievance CU-21-00282 with his appeal papers, the deputy director rejected his appeal, marking the end of the appeal process. *Id*.

As Ms. Grigsby-Brown explains, an inmate's administrative remedies are exhausted when the deputy director issues a decision on the merits. *Doc. 16-1 at 6*. Administrative remedies *are not* properly exhausted when, as in Mr. Hayes' case, the deputy director rejects an appeal on procedural grounds and does not reach the merits of a grievance. "[P]roper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency

6

addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002)).

Accordingly, Mr. Hayes failed to exhaust his administrative remedies with respect to his excessive-force claim against Defendant Watson, and Defendant Watson is entitled to summary judgment on the issue of exhaustion.

## IV.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Sergeant Stephen Watson's motion for summary judgment for failure to exhaust administrative remedies (*Doc. 16*) be GRANTED and judgment be entered in favor of Defendant Watson.[4]

2. This case be CLOSED.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

---

[4] The effect of this ruling is that Plaintiff Lawrence Hayes' excessive force claim asserted against Defendant Watson will be dismissed, without prejudice, for failure to exhaust administrative remedies. *Porter v. Sturm*, 781 F.3d 448, 452–53 (8th Cir. 2015) (finding dismissal without prejudice mandatory where inmate failed to exhaust administrative remedies in accordance with 42 U.S.C. § 1997e(a)).

Dated this 12th day of October, 2021.

_____
UNITED STATES MAGISTRATE JUDGE